## Kirk *against* Nice.

A contract to deliver iron, made in a certain place, in consideration of a sound price paid, is complied with by a delivery of iron obtained at that place, which the contracting party believed to be good, although, upon trial, it was found to be positively bad.

ERROR to the common pleas of *Lycoming* county.

In this action by William Nice against Kirk, Kelton & Co., the only point determined was fatal to the plaintiff's right of action ; and is fully stated in the opinion of the court.

*Parsons* and *Armstrong*, for plaintiffs in error.
*Campbell*, for defendant in error.

The opinion of the Court was delivered by

KENNEDY, J.—The plaintiffs in error were the defendants below, against whom the defendant in error brought this action to recover damages on account of the inferior and bad quality of eleven and a half tons of bar iron received by him of them in part satisfaction of a large quantity of store goods previously sold and delivered by him to them, according to the terms of a special agreement made between them.

The agreement was reduced to writing, and is as follows :

" Memorandum of agreement made and concluded on the 5th day of October 1830, between William Nice, of the borough of Milton, of the one part, and Kirk and Kelton, of Lycoming county, of the other part, witnesseth, that the said William Nice doth agree to sell to the said Kirk and Kelton his entire stock of store goods now on hand at first cost, for which said Kirk and Kelton are to pay him in bar iron of *Centre county metal, drawn to a reasonable bill,* and to be delivered at Milton, at 110 dollars *per ton ;* the iron to be delivered say not later than May next.

"KIRK, KELTON & Co.
"WILLIAM NICE."

The goods amounting to 2027 dollars 53 cents, according to an account thereof, made out by the parties shortly after entering into the agreement, were delivered by the defendant in error to the plaintiffs in error.   The plaintiffs in error also, within the time and at the place fixed by the agreement, delivered to the defendant in error the full quantity of bar iron thereby required, all made out of *Centre county metal, according to a bill furnished* by the defendant in error. The counsel for the plaintiff below filed a declaration, intending it, I presume, to be in *assumpsit;* in which, after reciting the agreement

[Kirk v. Nice.]

and averring the value of the store goods, and a delivery thereof by him to the defendants, he concludes it, without assigning any breach, in the following terms: " nevertheless, the said Kirk, Kelton & Co. their promise and assumption aforesaid little regarding, but contriving and fraudulently intending him the said William in this behalf craftily and subtilely to deceive and defraud, eleven tons ten hundred weight and seven pounds of bar iron of an inferior and unmerchantable quality to the said William at Milton aforesaid did deliver, well knowing the same to be unmerchantable and of inferior quality, and contrary to the bargain and agreement between them made, under pretence that the said bar iron was of the same value and goodness as Centre county metal of a good quality, to the damage of the said William Nice 450 dollars." From the declaration it is apparent that the whole quantity of bar iron is impliedly admitted to have been made of Centre county metal, and to have been delivered in due time at the proper place. The only complaint is, that eleven tons ten hundred weight and seven pounds were of inferior and unmerchantable quality, and that the defendants below knew it to be so at the time of delivery without communicating it to the plaintiff.

Several errors have been assigned which it is unnecessary to notice, because the fourth error alone raises an objection to the right of the plaintiff below to recover in this action that is insuperable and cannot be got over. This error is founded upon the charge of the court to the jury, in answer to the first point submitted by the counsel of the defendants below, which is in these words: " the counsel for the defendants respectfully requests the court to charge the jury in this cause, that even if they believe all the evidence that has been introduced by the plaintiff in support of this action, he is not entitled to recover under the present declaration and pleadings." To this the court in their charge advised the jury that "if, from the whole evidence given upon that subject [the good and merchantable quality of the iron], they should believe that the iron was not good and merchantable, it will then be proper for the jury to inquire whether the defects in its quality were known to the defendants or not at the time of furnishing it to the plaintiff. If the iron was not merchantable and the defendants knew it, and the defects were concealed from the plaintiff, your verdict should be for the plaintiff. In leaving the case to the jury with this direction, the court decline answering the first point of the defendants' counsel in the affirmative, and answer the same in the negative."

In order to decide the question here presented, correctly, it is proper first to ascertain and to state the nature and extent of the obligation incurred by the plaintiffs in error, on entering into the agreement as recited above. It is to be observed that at the time of making this agreement the plaintiffs in error do not appear to have been the owners of a furnace situate in *Centre county,* nor concerned in any way in making *Centre county* metal. On the contrary, it appears, from the record of the suit brought by the plaintiffs in error against

Harris and others, of Centre county, which was given in evidence by the defendant in error, very much too against the will of the counsel for the plaintiffs in error, that the plaintiffs in error bought their Centre county metal of Harris and others, the manufacturers of it, in Centre county, on the 1st of November 1830, after the making of their agreement with the defendant in error, out of which they made and delivered to him the eleven tons ten hundred weight and seven pounds of iron before mentioned. It is obvious, from the terms of the agreement, that it did not apply and had no reference whatever to bar iron, then manufactured by the plaintiffs in error, and on hand, out of Centre county metal, but to bar iron to be manufactured or made thereafter, by them, out of Centre county metal, according to a *reasonable bill.* This bill, upon a fair construction of the agreement, the defendant had a right to furnish, and to require of the plaintiffs in error that they should make the iron in conformity to it, if it were reasonable, because they bound themselves so to do. Having no Centre county metal on hand then, nor contract for the future delivery of any when they made their agreement with the defendant in error, they likewise bound themselves expressly to make the bar iron, for the defendant in error, out of Centre county metal, and consequently it was understood between the parties that the plaintiffs in error would procure such metal. This they were willing to do, and obligated themselves accordingly, but no further : to this the defendant in error acceded, and beyond this he had no right to require any thing at the hands of the plaintiffs in error. They did not undertake to deliver to him bar iron of a *good* and *merchantable quality,* nor bar iron made of *Centre county* metal of a *good and merchantable quality,* but simply bar iron *made* out of *Centre county metal.* Hence it is manifest that the plaintiffs in error, on the one hand, were willing to bind themselves, at all hazards, to procure Centre county metal, and to make the bar iron of it, according to a reasonable bill, but unwilling to be answerable further for its properties or quality. They were doubtless, in the fulfilment of their agreement in procuring Centre county metal for the purpose of making the bar iron, which they were to deliver to the defendant in error, bound to act honestly ; that is, not to procure or take such metal for this purpose, as they knew to be bad or of an inferior quality, but to obtain such as they believed to be good and merchantable : and if, after having procured such as they had reason to and did believe was good, it turned out to be bad, they, according to the terms of their contract with the defendant in error, were not bound to go further than to make the bar iron of it, according to his reasonable bill, and to deliver it to him at the place and within the time appointed. If they did so, the defendant in error, on the other hand, was bound to receive the iron ; and having received it he got all that was promised or assured to him by the contract. It is evident, from the contract, that he was content, at the time of making it, to take his chance of the bar iron's being of good or bad quality, provided it

II.—WW

[Kirk v. Nice.]

were made of *Centre county* metal, selected honestly, for that purpose, by the plaintiffs in error. It is also clear that he would not have been obliged, according to the terms of the contract, to have received bar iron, however good it might have been made, from other metal than Centre county; which is a sufficient answer to the argument of the counsel for the defendant in error, that *Centre county* metal was inserted to show that the bar iron must be of good quality, and to oblige the plaintiffs in error to deliver such; for why, I would ask, insert *Centre county* metal, if it had been understood by the parties, at the time, that the plaintiffs in error were to be responsible for its being of good quality, at all events. If this were the agreement and understanding of the parties, what possible difference could it make to the defendant in error, whence or what county the metal should be of, out of which the bar iron was to be made, if the plaintiffs in error were absolutely bound for the goodness of its quality? I must confess that I am unable to perceive any; nor can I conceive any other rational motive for introducing the clause that the bar iron should be manufactured of Centre county metal, than that of regulating the extent of the responsibility of the plaintiffs by limiting it to bar iron made of Centre county metal, and giving to the defendant in error, at the same time, all the advantage that might accrue from the chances in favour of Centre county metal, if there were any, being better, generally, than the metal of other places. It may also be further seen that the plaintiff below, in his declaration, has not alleged that this clause was introduced and used in the agreement for the purpose and with the intent of making the defendants liable for any defect there might be in the good and merchantable quality of the bar iron or metal out of which it should be made. And even if he had, I do not see well how such an averment could have been sustained, as it would go to change and alter, very materially, the tenor and operation of the agreement.

Under this view of the agreement between the parties in this case, I think the court of common pleas was wrong in advising the jury that if they believed, from the evidence, that the plaintiffs in error knew, at the time they delivered the iron to the defendant in error, that it was of inferior and unmerchantable quality, and concealed this fact from the defendant in error, that their verdict ought to be in his favour. Because it was not contrary to the tenor and effect of their agreement to deliver such iron, even if they did then know it to be of inferior and unmerchantable quality; provided it was made of Centre county metal, and they obtained that metal for the purpose, believing when they got it that it was good. That the bar iron complained of was made of Centre county metal was proved beyond all doubt, even by testimony adduced by the defendant in error himself, and has been admitted in argument. That the plaintiffs in error knew, at the time they procured the metal of which they made the bar iron delivered to the defendant in error, that it was bad, or of inferior quality, or that it was such as good and mer-

[Kirk v. Nice.]

chantable bar iron would not be made of, is not even alleged in the, declaration; nor does the slightest particle of evidence appear to have been given, tending in the least degree to prove it.   On the contrary, the record of the suit given in evidence by the defendant in error, so much against the will of the plaintiff in error, is made evidence in favour of the plaintiffs in error, by the act of the defendant in error, and is most decidedly in favour of the plaintiffs in error on this point, for the plaintiffs in error, who were the plaintiffs in that suit, allege in their declaration, which the defendant relied on as evidence for him, that Harris and others, of whom they bought and procured the metal, had deceived them, in selling and delivering to them metal of bad quality, which could not have been if the plaintiffs in error knew it was bad at the time.

Judgment reversed.